WILLIE SIMPKIN, Plaintiff, *v.* A. V. J. REALTY CORPORATION, Defendant.

City Court of the City of New York, Trial Term, Bronx County, November 15, 1954.

*David Rabinowitz* and *David Delman* for plaintiff.

*Morton S. Heller* and *Abraham Dobensky* for defendant.

QUINN, J. The defendant was the owner of the multiple dwelling at 1515 Macombs Road, Bronx. Part of the equipment maintained by the defendant, for the convenience of tenants, was an incinerator. This device, common to modern apartment houses in the city of New York, consists of a combustion chamber or furnace in the basement, with a flue running vertically to the roof and terminating there in a chimney; in the common hall, on each floor of the building, the corridor wall is recessed into a small closet, enclosed by a full, standard-sized door; in the recessed wall of the closet, on each floor, is a small opening into the flue, usually about four feet above the closet floor; this flue-opening is fitted with a metal chute fixed to a self-closing hopper-door hinged at the bottom, so that when the top of the hopper-door is retracted, by pulling on its handle, the chute is tilted up to form a receptacle for the deposit of refuse and when the door is released the chute tilts downward and precipitates the refuse down the flue into the furnace in the basement.

It is the claim of the plaintiff that on November 21, 1953, at about 11:30 A.M. while he was in the hire of a tenant, as an independent contractor engaged in redecorating apartment 309, he carried a bundle of flattened-out, cardboard cartons under his arm to the incinerator closet on the third floor for disposal down the incinerator. Immediately upon opening the door of the incinerator-closet, but before reaching the hopper-door of the incinerator proper, or even entering the incinerator-closet, he was met by a sudden burst of flame which shot out from the incinerator-closet and burned him about his face and arms.

It is conceded that affixed to the outer surface of the incinerator-closet door at the third floor, as well as to the recessed wall of the incinerator-closet just above the hopper-door, in accordance with the requirements of section C26–701.0 of the Administrative Code of the City of New York, was the following clearly visible warning:

" Notice. Throwing carpet sweepings containing napthalene, camphor balls and flakes, floor scrapings, oil soaked rags, empty paint cans or any other inflammable and highly combustible substance into this incinerator is unlawful and subjects the offender to a penalty."

It is not suggested that due and proper display of this warning had been omitted from the incinerator-closet doors or walls on any other floor of the house.

It was shown by the defendant that at about 9:00 A.M., on the day of the plaintiff's mishap, the superintendent in charge of the building had made his daily, routine inspection of all the incinerator-closets and hopper-doors throughout the building and found everything in good order. He had then cleaned out the incinerator-furnace in the basement and left it in normal operating condition.

The foregoing being the final state of the proof it must necessarily be the contention of the plaintiff that, though there is no direct evidence of any negligence on the part of the defendant, nevertheless, " a common-sense appraisal of the probative value of the circumstantial evidence " preponderates in favor of the inference that the sole, proximate cause of the plaintiff's injuries was the negligent use, operation or control of the incinerator by the defendant at the time the injury occurred. (*George Foltis Inc.* v. *City of New York*, 287 N. Y. 108, 115.)

In any such common-sense appraisal of the probative value of the circumstantial evidence it seems quite obvious that, excluding remote, extraordinary possibilities, the sudden, forcible expulsion of flame from the incinerator opening on the third floor, in all likelihood, could have resulted only from the combustion of highly volatile material. Only such material would generate gases capable of expanding so hugely and with such almost instantaneous rapidity as to exert a sudden violent pressure great enough to burst open the incinerator hopper-door at the third floor and propel a torch-tongue of fire across the incinerator-closet to where the plaintiff stood at the partly opened closet-door in the common hall. The agency, then, which caused the plaintiff's injury was the explosive, combustible material which someone introduced into the incinerator. The crucial

question is: who threw the explosive material into the incinerator?

The plaintiff says the circumstantial evidence points with reasonably probable certainty to the defendant. Even assuming this to be true, for the purpose of the argument merely, it does not point with probable certainty to the defendant exclusively. For indeed the circumstantial evidence points with at least equal, if not greater, probable certainty to any one of an unknown number of unknown persons, on every floor of the apartment house, beyond the immediate power of the defendant to know or to deter, who had free access to the incinerator flue and full opportunity to deposit a variety of highly combustible materials therein, at, or just before, the moment the luckless plaintiff had the misfortune to make his visit to the incinerator-closet on the third floor. There is no warrant in the evidence, in logic or in law for inferring that it was the former rather than the latter. (*Sandler* v. *Garrison,* 249 N. Y. 236, 240.)

The evidence falls far short of establishing that, at the time of the injury, the defendant was the exclusive user of the incinerator, or had exclusive control of the time and manner of its use or the matter introduced into it. Before the common-sense rule of *res ipsa loquitur* may be invoked in aid of a plaintiff lacking direct proof of the negligence of the defendant, there must be a showing that at the time of the occurrence there was the essential element of exclusive user, or exclusive possession or control, or exclusive knowledge in the defendant of the care exercised in the use, management or control of the agency causing the accident. (*George Foltis Inc.* v. *City of New York, supra,* pp. 114, 115; *Galbraith* v. *Busch,* 267 N. Y. 230, 234; *Massa* v. *Nippon Yusen Kaisha,* 264 N. Y. 283; *Sandler* v. *Garrison, supra; Slater* v. *Barnes,* 241 N. Y. 284, 287; *Nabson* v. *Mordall Realty Corp.,* 257 App. Div. 659, 661.)

It would be ridiculous in the extreme to postulate the responsibility of the defendant in terms of such unremitting, active vigilance as to require the posting of a continual guard at each incinerator-closet to examine the materials tenant-users proposed to deposit therein. That would be so onerous a duty of extraordinary care that, in the light of the practical economics of modern real-estate ownership and management, its observance would be prohibitive. Yet under no other concept could the defendant be held to be in exclusive management and control of the incinerator at the time this accident happened.

The defendant's duty was one of reasonable care commensurate with the ordinary dangers to be apprehended. That duty

was fulfilled when the notices required by the ordinance were properly displayed and reasonably regular inspection of the facilities and superintendence of the basic operation of the incinerator were had from time to time. (See *Pettingell* v. *Streg,* 278 App. Div. 673, affd. 303 N. Y. 778.) There is no evidence of any dereliction by the defendant in this duty. Neither is there evidence of any structural defect in the incinerator, nor any condition of disrepair of which the defendant had notice, actual or constructive.

The plaintiff having failed to establish the negligence of the defendant by a fair preponderance of the credible evidence, the complaint is dismissed on the merits.